IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-1048-WKW |
| | ) | [WO] |
| $389,820.00 IN UNITED STATES | ) | |
| CURRENCY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On the evening of May 13, 2016, Rodriguez Garth was shot twice. Someone called 911, and the police arrived at the Sonic drive-in in Millbrook, Alabama. The police officers noticed that there were two gunshot holes through the driver's side window of the Mercedes-Benz Garth was driving, and they found large quantities of cash in his pocket and inside the Mercedes. Several pieces of gold and diamond jewelry were retrieved from Garth's person. Garth was taken to a hospital for treatment, and he passed away approximately a month later. After Garth was taken to the hospital, investigators obtained two warrants to search his home. They found a hoard of cash, a vintage Chevrolet Chevelle, hundreds of pounds of marijuana, cocaine, guns, and drug paraphernalia. Based on the apparent connection with drug

trafficking activity, the United States filed a complaint, seeking forfeiture *in rem*[1] of

$389,820.00, $15,780.00, $4,550.00, a 1972 Chevrolet Chevelle SS 396, and

miscellaneous jewelry (Defendants). (Doc. # 1.)[2] Ruby Barton (Claimant), Garth's

---

[1] "A civil forfeiture action is not an action in personam against the claimant of the property; rather, it is an action in rem against the property itself." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys., Ala.*, 941 F.2d 1428, 1435 (11th Cir. 1991); *see United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868, 876 (10th Cir. 1992) ("A forfeiture proceeding is an *in rem* proceeding brought against the property seized pursuant to the legal fiction that the property itself is guilty of a crime or is proceeds of a crime." (citing *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–84 (1974))); *see also* CONG. RSCH. SERV., R43890, ASSET FORFEITURE: SELECTED LEGAL ISSUES AND REFORMS 1–18 (2015) (providing an overview of civil asset forfeiture).

[2] The United States previously brought a nearly identical action against Defendants. *United States v. $389,820.00 in U.S. Currency, et al.*, 2:16-cv-00985-ECM (M.D. Ala. Dec. 20, 2016) (*$389,820 I*). Chief Judge Emily C. Marks dismissed that case without prejudice due to the Eleventh Circuit's holding that the district court lacked *in rem* jurisdiction *at the time* the case was filed. *$389,820 I*, ECF Nos. 131, 124 at 7 ("Thus, the district court lacked in rem jurisdiction over the defendant property when it first proceeded against the property[.]"). Less than two weeks later, on December 17, 2020, the United States refiled, and this action ensued. (Doc. # 1.) The court previously denied Claimant's Motion to Dismiss (Doc. # 7) and found that it had *in rem* jurisdiction over Defendants via the state court's transfer order. (Doc. # 13 at 5 ("[E]xclusive federal jurisdiction has existed since May 3, 2017.").) The Eleventh Circuit contemplated, and allowed for, this outcome. *$389,820 I*, ECF No. 124 at 8 ("It may be that as a result of the state court's turn-over order, the district court could now exercise jurisdiction over the defendant property."). As a result, any attempt by Claimant to re-litigate this jurisdictional issue in her cross motion for summary judgment (Doc. # 62 at 7–9, 14) is not addressed further. Claimant also argues that Plaintiff is barred from seeking forfeiture since Plaintiff filed its current complaint more than ninety days after Claimant filed her claim. (Doc. # 62 at 9–11 (citing 18 U.S.C. § 983(a)(3)).) That is true (*see* Docs. # 1, 37), but Plaintiff complied with this requirement in the prior case (*see $389,820 I*, ECF Nos. 1, 12). The statute—§ 983(a)(3)(A)—does not address the unique situation here (where the ninety-day requirement is met in the first case but that case is later dismissed for lack of *in rem* jurisdiction and then refiled with *in rem* jurisdiction). The parties have not cited any instructive caselaw, and independent research did not uncover any. However, the ninety-day requirement is not jurisdictional, and there is no evidence or argument indicating that Plaintiff did not pursue its rights diligently after *$389,820 I* was dismissed for lack of *in rem* jurisdiction. *See United States v. 2014 Mercedes-Benz GL350BLT, VIN: 4JGDF2EE1EA411100*, 162 F. Supp. 3d 1205, 1214 (M.D. Ala. 2016) (finding that a court has discretion to equitably toll § 983(a)(3)(A)'s ninety-day deadline), *judgment entered sub nom. United States v. 2014 Mercedes-Benz GL350BLT*, No. 1:14-CV-1112-MHT, 2016 WL 684603 (M.D. Ala. Feb. 18, 2016). As a result, the court will not bar Plaintiff from pursuing its forfeiture action on this ground. Finally, Claimant

mother and executrix of Garth's estate, opposes Plaintiff's motion and claims ownership of Defendants.  (*See* Doc. # 37.)  Plaintiff filed a motion for summary judgment.  (Doc. # 44.)  Claimant responded with a cross motion for summary judgment (Doc. # 62), and Plaintiff responded (Doc. # 68).  For the reasons discussed below, Plaintiff's motion is due to be GRANTED, and Claimant's motion is due to be DENIED.[3]

## I.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345, 1355.  Venue is proper pursuant to 28 U.S.C. § 1395 and 21 U.S.C. § 881(j).

## II.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

---

argues that the five-year statute of limitations, *see* 19 U.S.C. § 1621, bars this forfeiture action. (Doc. # 62 at 11–14.)  Plaintiff correctly points out that it filed this lawsuit in December 2020, within five years of the discovery of the criminal offenses in May 2016.  (Doc. # 68 at 6.) Claimant's argument is meritless and warrants no further discussion.

[3] In *$389,820 I*, Chief Judge Marks granted Plaintiff's motion for summary judgment. *See $389,820 I*, ECF No. 103.  But the absence of *in rem* jurisdiction, *see* supra note 2, voided the summary judgment ruling.

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant without a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "[A]t the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.  BACKGROUND

On May 13, 2016, the Millbrook, Alabama Police Department received a 911 call: someone had been shot.  That individual was Garth, who was found at the Sonic drive-in in Millbrook, Alabama.  (Doc. # 45-1 at 4.)[4]  He was suffering from two gunshot wounds, and there were "two gunshot holes in the driver's side window of the Mercedes-Benz" he had been driving.  (Doc. # 45-1 at 4–5.)  Garth said that "he had been shot at the Liberty Mart in Millbrook, Alabama."  (Doc. # 45-1 at 4.)  Garth "had a large sum of U.S. currency in his pocket as well as inside the Mercedes." (Doc. # 45-1 at 5.)  Assorted jewelry (appraised at $91,250.00) was retrieved from his person.  (Doc. # 45-1 at 6–7.)[5]  He was taken to a hospital for treatment, and he died there approximately a month later.  (Doc. # 45-2 at 8.)

Investigators discovered that Garth lived at 94 Breckenridge Court, Deatsville, Alabama.  Neighbors informed the investigators that on May 13, 2016, they had heard two gunshots at Garth's residence.  And the investigators "observed where a vehicle [had] spun from the driveway and across the neighbor's lawn leaving ruts in the neighbor's lawn."  (Doc. # 45-1 at 5.)  They determined that the shooting had not occurred at the Liberty Mart but at Garth's residence and that Garth had

---

[4] All citations use the pagination as designated by CM/ECF.

[5] There is a lack of clarity on this point since earlier in his affidavit Officer Bruce Little says that assorted jewelry was found at Garth's residence (Doc. # 45-1 at 5), but it is not clear what jewelry was found there.

driven to the Sonic "after being shot." (Doc. # 45-1 at 5.) The investigators applied for and obtained a search warrant. (Doc. # 45-1 at 5.)

Once inside the residence, the investigators observed "several large bundles of marijuana in the closet of the guest bedroom." (Doc. # 45-1 at 5.) They "applied for and obtained an amended search warrant for drugs at the residence." (Doc. # 45-1 at 5.) During the search, the investigators found "8 bundles of marijuana in the closet of the guest bedroom, 4 totes containing 11 bundles of marijuana" which totaled 441 pounds, "4 gallon size plastic bags containing cocaine (1,635 gross grams), a bag containing 1 bag of cocaine (42.7 gross grams) and 1 digital scale," two pistols, "6 six cell phones," "AR 15 magazines," "a 1972 Chevrolet Chevelle SS 396 in the garage," "a Cadillac CTS," and large quantities of United States currency. (Doc. # 45-1 at 5–6.) Garth was "a known drug trafficker in the central Alabama area." (Doc. # 45-1 at 6.)

## IV. DISCUSSION

Plaintiff sues Defendants *in rem*, seeking forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A)[6] for violations of 21 U.S.C. § 841(a)(1) (manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense a controlled substance) and 21 U.S.C. § 846 (attempting or conspiring to violate the Controlled Substances Act). (Docs. # 1 at 2, 45 at 1.)

---

[6] Because forfeiture is appropriate under 21 U.S.C. § 881(a)(6), 18 U.S.C. § 981(a)(1)(A) and its applicability are not addressed.

"The Controlled Substances Act provides for the civil forfeiture of money and other things of value 'furnished or intended to be furnished by any person in exchange for a controlled substance . . . , all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate any violation of [the Controlled Substances Act].'" *United States v. Bird*, No. 21-11260, 2021 WL 5834306, at *2 (11th Cir. Dec. 9, 2021) (quoting 21 U.S.C. § 881(a)(6)). The government must "establish, by a preponderance of the evidence, that the property is subject to forfeiture."[7] 18 U.S.C. § 983(c)(1); *United States v. $183,791.00 in U.S. Currency*, 391 F. App'x 791, 794 (11th Cir. 2010). Specifically, "[t]o obtain civil forfeiture, the government must establish by a preponderance of evidence 'a substantial connection between the property and the offense.'" *United States v. $291,828.00 in U.S. Currency*, 536 F.3d 1234, 1237 (11th Cir. 2008) (quoting 18 U.S.C. § 983(c)(3)).

The Eleventh Circuit "look[s] at the 'totality of the circumstances' when determining whether the government has satisfied this standard." *$183,791.00 in*

---

[7] The Civil Asset Forfeiture Reform Act (CAFRA) of 2000 "rais[ed] the government's burden of proof from probable cause to preponderance of the evidence." *United States v. One 1990 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft, Venezuelan Registration No. YV219T, Serial UC118*, 619 F.3d 1275, 1277–78 (11th Cir. 2010). "The burden of showing something by a 'preponderance of the evidence,' the most common standard in the civil law, 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'" *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993) (alteration in original) (quoting *In re Winship,* 397 U.S. 358, 371–372 (1970) (Harlan, J., concurring)).

*U.S. Currency*, 391 F. App'x at 794 (citing *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993)).   The "[g]overnment may use evidence gathered after the filing of a complaint for forfeiture to establish" that the property is subject to forfeiture.   18 U.S.C. § 983(c)(2); *Bird*, 2021 WL 5834306, at *2 (citing *$291,828.00 in U.S. Currency*, 536 F.3d at 1237); *$183,791.00 in U.S. Currency*, 391 F. App'x at 794.   Such evidence can include "'circumstantial evidence and hearsay,' and the district court should evaluate the evidence presented with 'a common sense view to the realities of normal life.'"   *$291,828.00 In U.S. Currency*, 536 F.3d at 1237 (quoting *Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys., Ala.*, 941 F.2d at 1440).

If the government establishes that the property is subject to forfeiture, the claimant can assert an "[i]nnocent owner defense" and must establish that defense by a preponderance of the evidence.   18 U.S.C. § 983(d).   Otherwise, "the property will be forfeited."   *United States v. Eighty Thousand Six Hundred Thirty-Three Dollars ($80,633.00)*, No. 2:05-CV-1086-WKW, 2008 WL 1808328, at *2 (M.D. Ala. Apr. 21, 2008) (citing *United States v. Cleckler*, 270 F.3d 1331, 1334 (11th Cir. 2001)), *aff'd sub nom. United States v. Eighty Thousand Six Hundred Thirty-Three*

*Dollars, $80,633.00 in U.S. Currency*, 340 F. App'x 579 (11th Cir. 2009).[8]  The court will examine whether Plaintiff has met its burden of proof for each Defendant.

**A.    Defendants $389,820.00, $15,780.00, and $4,550.00**

Three Defendants are large sums of United States currency ($389,820.00, $15,780.00, and $4,550.00).  These Defendants were discovered in Garth's pocket and in the Mercedes on the night of the shooting (Docs. # 1 at 3, 45-1 at 5), in Garth's residence (Docs. # 1 at 4, 45-1 at 5), and in the trunk of the Chevelle parked in Garth's garage (Docs. # 1 at 4, 45-1 at 5–6).  Plaintiff seeks forfeiture of them pursuant to 21 U.S.C. § 881(a)(6).  (*See* Docs. # 45 at 9–12, 68 at 9–11.)

"Pursuant to § 881(a)(6), the government is not required to demonstrate that . . . seized currency was connected with any particular drug transaction; instead, the government need only show that the money was 'related to some illegal drug transaction.'" *United States v. Currency, $21,175.00 in U.S.*, 521 F. App'x 734, 739 (11th Cir. 2013) (quoting *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc)).  Under the totality of the circumstances, these Defendants are due to be forfeited.  Three factors support this finding.

First, large sums of currency can indicate illegal drug activity.  "Although a large amount of cash alone is insufficient to meet the government's [preponderance

---

[8] Plaintiff anticipates and asserts that Claimant cannot establish the innocent owner defense.  (Doc. # 45 at 12–15.)  But Claimant never asserts an innocent owner defense, so no further discussion is necessary.

of the evidence] burden, it is 'highly probative of a connection to some illegal activity.'" *$183,791.00 in U.S. Currency*, 391 F. App'x at 794–95 (quoting *$121,100.00 in U.S. Currency*, 999 F.2d at 1507).   And the way large amounts of currency are packaged also can indicate illegal drug activity. *See United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1274–75 (10th Cir. 2007) (finding that the large amount of seized currency and the fact that it "was bundled in stacks held by rubber bands and wrapped in cellophane" added to the finding that the government had met its burden); *$183,791.00 in U.S. Currency*, 391 F. App'x at 795 (noting that "large quantities of cash rubber-banded into bundles" can, in part, indicate illegal drug activity (quoting *$242,484.00*, 389 F.3d at 1161)); *$242,484.00*, 389 F.3d at 1160 ("Wrapping cash in cellophane-type material is a technique known to be used by drug dealers to prevent discovery by drug-sniffing dogs.").

Here, Defendants are suspiciously large quantities of currency. *United States v. $22,991.00, More or Less, in U.S. Currency*, 227 F. Supp. 2d 1220, 1232 (S.D. Ala. 2002) ("[T]he defendant currency, $22,991.00, is an unusually large amount of cash to be transported in the trunk of an automobile" and is "highly probative, although not dispositive, circumstantial evidence of a link between this exorbitant amount of cash and illegal drug activity."); *see also United States v. $29,959.00 U.S. Currency*, 931 F.2d 549, 553 (9th Cir. 1991) (finding that "[c]ash amounting to $29,959.00 is an extremely large amount to be kept in the home," which "alone 'is

10

strong evidence that the money was furnished or intended to be furnished in return for drugs'" (quoting *United States v. Padilla*, 888 F.2d 642, 643 (9th Cir. 1989))), *abrogated by Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80 (1992). And much of the currency found in Garth's residence and the Chevelle was bound with rubber bands and "packaged in vacuum sealed bags," which indicates drug dealing. (Doc. #45-1 at 6.)  Claimant does not object to these findings.  These large quantities of currency, packaged in this manner, indicate illegal drug activity.  This fact weighs in favor of Plaintiff's motion for summary judgment.

Second, currency located near illegal drugs indicates illegal drug activity. *United States v. Seventy-Four Thousand Seven Hundred Dollars ($74,700 In U.S. Currency)*, No. 2:06-CV-0736-WKW, 2008 WL 1805432, at *4 (M.D. Ala. Apr. 18, 2008) (noting that "drugs and drug paraphernalia found in close proximity to currency is yet another factor indicative of a substantial connection between the currency and drug trafficking"); *$22,991.00, More or Less, in U.S. Currency*, 227 F. Supp. 2d at 1233 (collecting cases where "courts have recognized that, for purposes of a civil forfeiture action, the physical location of the subject property to the drugs, at the time those items are detected by law enforcement, is strong circumstantial evidence of narcotics trafficking").  Defendant $15,780.000 was found in Garth's residence, Defendant $389,820.00 was found stowed in the trunk of the Chevelle, which was in the residence's garage, and Defendant $4,550.00 was discovered inside

Garth's pocket and in the Mercedes on the night of the shooting.  (Doc. # 1 at 3–4, *see also* Doc. # 45-1 at 5–6.)  In the residence, investigators discovered hundreds of pounds of marijuana and a substantial amount of cocaine.  (Doc. # 45-1 at 5.)  These facts are undisputed.  As a result, the fact that Defendants were found near illegal drugs weighs in favor of Plaintiff's motion for summary judgment.[9]

Third, no evidence of legitimate sources of income is probative of illegal drug activity.  *United States v. $52,000.00, More or Less, in U.S. Currency*, 508 F. Supp. 2d 1036, 1042 (S.D. Ala. 2007) ("In civil forfeiture cases, the absence of an apparent, verifiable, or legitimate source of substantial income is probative evidence of a substantial connection to illegal activity."); *United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003) (upholding forfeiture under 21 U.S.C. § 881(a)(6) where "[t]he evidence" of "legitimate income was insufficient to explain the large amount of currency found").  Indeed, "[a] lack of legitimate income sufficient to explain large amounts of cash 'unrebutted by any evidence pointing to any other source of legitimate income or any evidence indicating innocent ownership, satisfies the burden imposed by the statute [to establish a substantial connection].'"  *Eighty Thousand Six Hundred Thirty-Three Dollars ($80,633.00)*,

---

[9] Of course, this reasoning does not clearly apply to Defendant $4,550.00 since it was not found in the residence or in the residence's garage.  However, this is not fatal for Plaintiff's argument that Defendant $4,550.00 should be forfeited.

2008 WL 1808328, at *6 (alteration in original) (quoting *$174,206.00 in U.S. Currency*, 320 F.3d at 662).

Here, Claimant has provided no evidence of a legitimate source of income, despite repeated requests from Plaintiff.  (Doc. # 70 at 2.)  Indeed, Claimant could not explain how Garth had so much money (Doc. # 45-2 at 4–5) and was "surprised" by her son having the currency (Doc. # 45-2 at 7–8).  This lack of *any* evidence of a legitimate source of income for such large amounts of currency weighs in favor of Plaintiff's motion for summary judgment.  Claimant has failed to raise a genuine dispute of material fact as to whether these Defendants are forfeitable under 21 U.S.C. § 881(a)(6).  Based on the totality of the circumstances, Defendants $389,820.00, $15,780.00, and $4,550.00 are due to be forfeited.

## B.    Defendant Assorted Jewelry

There were several pieces of expensive jewelry removed from Garth's person. (Doc. # 45-1 at 6.)  These included the following (with their respective appraised monetary values): an eighteen karat yellow gold Rolex watch ($32,750.00), a three row fourteen karat yellow gold diamond bracelet with ninety-three diamonds ($17,500.00), a thirty-two inch ten karat gold link chain necklace ($24,000.00), and a ten karat yellow gold and diamond rectangular medallion with approximately five-hundred and seven diamonds ($17,000.00).  (Doc. # 45-1 at 6.)  The total value of these pieces (Defendant assorted jewelry) was appraised at $91,250.00.  (Doc. # 45-

1 at 7.)  Plaintiff seeks forfeiture of Defendant assorted jewelry.  (*See* Docs. # 45 at 11–12, 68 at 9–11.)

As noted, Claimant has provided no evidence of a legitimate source of income that would explain how Garth owned such opulent jewelry.  Claimant could not explain how Garth had this jewelry (Doc. # 45-2 at 7) and was "very surprised" by it (Doc. # 45-2 at 7).  This complete failure of proof of a legitimate source of income weighs in favor of Plaintiff's motion for summary judgment.  *See United States v. Two Parcels of Real Prop. Located in Russell Cnty., Ala.*, 868 F. Supp. 306, 311 (M.D. Ala. 1994), *aff'd*, 92 F.3d 1123 (11th Cir. 1996); *Eighty Thousand Six Hundred Thirty-Three Dollars ($80,633.00)*, 2008 WL 1808328, at *6; *$52,000.00, More or Less, in U.S. Currency*, 508 F. Supp. 2d at 1042.

Claimant has failed to raise a genuine dispute of material fact as to whether Defendant assorted jewelry is forfeitable under 21 U.S.C. § 881(a)(6).  *See United States v. One 2008 Chevrolet Tahoe C1500*, No. 1:09-CV-0799-JFK, 2011 WL 176887, at *8–9 (N.D. Ga. Jan. 19, 2011).  She has not challenged Plaintiff's argument that these pieces of jewelry either were "derived from or facilitated drug trafficking activities" and are thus forfeitable.  (Doc. # 68 at 10–11.)  Based on the totality of the circumstances, Defendant assorted jewelry is due to be forfeited.

## C.  **Defendant Chevelle**

Finally, Plaintiff asserts that the 1972 Chevrolet Chevelle SS 396 is subject to forfeiture.  (Docs. # 45 at 11–12, 68 at 9–11.)   Based on the totality of the circumstances, the Chevelle is due to be forfeited.  First, as already stated, Garth had no identifiable, legitimate source of income with which to buy a classic Chevelle. This fact weighs in favor of Plaintiff's motion for summary judgment.  *See Two Parcels of Real Prop. Located in Russell Cnty., Ala.*, 868 F. Supp. at 311; *Eighty Thousand Six Hundred Thirty-Three Dollars ($80,633.00)*, 2008 WL 1808328, at *6; *$52,000.00, More or Less, in U.S. Currency*, 508 F. Supp. 2d at 1042.

Second, Claimant has not contested Plaintiff's assertion that Defendant Chevelle either was "derived from or facilitated drug trafficking activities" and is thus forfeitable.  (Doc. # 68 at 10.)  And Claimant has not raised a genuine dispute of material fact as to the forfeitability of Defendant Chevelle under 21 U.S.C. § 881(a)(6).  *See One 2008 Chevrolet Tahoe C1500*, 2011 WL 176887, at *8–9.

Claimant does not explain how Garth obtained the Chevelle through legal means, unrelated to drug proceeds and activities.  As a result, the circumstantial evidence and the commonsense argument that Defendant Chevelle is substantially connected to illegal drug activities are what remain.  *See United States v. 6 Fox St.*, 480 F.3d 38, 43–44 (1st Cir. 2007) (finding that claimant's utter failure to "offer any countervailing evidence" as to how he afforded his lavish expenditures meant that

15

"the district court really had no choice but to grant summary judgment in the Government's favor").  Based on the totality of the circumstances, Plaintiff has carried its burden.  Defendant Chevelle is due to be forfeited.

## V.  CONCLUSION

For the reasons provided above, it is ORDERED that Plaintiff's motion for summary judgment (Doc. # 44) is GRANTED and Claimant's cross motion for summary judgment (Doc. # 62) is DENIED.  As a result, Defendants ($389,820.00, $15,780.00, $4,550.00, 1972 Chevrolet Chevelle SS 396, and miscellaneous jewelry) are FORFEITED to the United States.  Judgment in favor of Plaintiff will be entered separately.

DONE this 9th day of December, 2022.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE